UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BARBARA LAHMAN<br>57521 Pear Rd<br>South Bend, IN   46619<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>THE CARSWELL GROUP, INC. d/b/a<br><br>Independent Management Services<br>14381 North Road<br>Fenton, Michigan 48430<br><br>　and<br><br>Melissa Block<br>c/o Independent Management Services<br>14831 North Road<br>Fenton, Michigan   48430<br><br>　　　　　　　　Defendants. | CASE NO. <u>3:14-cv-1430</u> |

## COMPLAINT

### NATURE OF THE CASE

The Plaintiff, Barbara Lahman, (Lahman or Plaintiff) brings this action against her employer, The Carswell Group, Inc., d/b/a/ Independent Management Services, and Melissa Block, pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. Sections 12101 *et seq.*, the Age Discrimination in Employment Act (ADEA) 29 USC Sections 621-634, 42 USCA 2000 (e); and for discrimination, retaliation and other violations under the Employee Retirement Income Security Act ("ERISA), 29 U. S. C. Sections 1001 *et seq.*

### PARTIES

1. Plaintiff, Barbara Lahman, (hereinafter "Lahman or "the Plaintiff") is a resident of St. Joseph County, City of South Bend, State of Indiana, and a citizen of the United States;

1

2. Defendant, The Carswell Group, Incorporated, d/b/a Independent Management Services, is a Michigan for profit corporation, doing business in Indiana as Independent Management Services (hereinafter "IMS");

3. Defendant IMS manages Town and Country Apartments, 1221 Georgia Blvd. Elkhart, Indiana 46517, a Housing and Urban Development (HUD) subsidized housing complex, where Plaintiff was employed as the site manager;

4. Defendant Melissa Block (hereinafter "Block") was Plaintiff's immediate supervisor and is an IMS Regional Manager.

## JURISDICTION AND VENUE

5. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. Section 1332; and 29 U.S.C. Section 1132(e)(1); 29 U.S.C. Section 521 et seq; 42 U.S.C. 2000(e); 42 U.S.C. 12101 et seq.

6. Venue in this forum is proper pursuant to 28 U. S. C. Section 1132(e)(2);

7. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on November 27, 2012, and having received no response from the EEOC, requested a Notice of Right to Sue on January 10, 2014, which was received by the Plaintiff on January 21, 2014 and attached hereto as Exhibit "A"..

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial in this action for all claims so triable.

## FACTS

1) The Plaintiff was hired by IMS on January 11, 2012, as the site manager of Town & Country Apartments in Elkhart, Indiana, a Housing and Urban Development (HUD) subsidized housing project;

2) The Plaintiff had been in the property management industry for over ten years when IMS hired her to manage the Town & Country Apartment complex a low income, government subsidized complex with 78 units;

3) When hired, the Plaintiff disclosed that although she had managed multi-

        unit properties, she had not previously managed a HUD property and was therefore not familiar with specific HUD procedures;

4) The Regional Manager, Melissa Block, acknowledged that she would assist the Plaintiff learning various HUD requirements and procedures, particularly certifying potential tenants;

5) The property had 6 vacancies when the Plaintiff was hired and 2 when she was fired;

6) Units could not be leased until repaired;

7) Filling units was complicated by repairs required after tenants vacating, as well as certification information from applicants lacking working phone numbers, e-mail addresses, income data or other required information;

8) HUD required applicants be "certified" to fall within the requisite low income parameters so as to qualify for the housing subsidies;

9) Block acknowledged and commiserated that certification was a challenge due to the quality of the information provided by applicants and the time required to pursue information from applicants;

10) The Plaintiff received a 90 day review on or about March of 2012 that rated her at the top of the rating scale;

11) The Plaintiff did not receive any warnings or write-ups during the 90 day review period;

12) The Plaintiff worked diligently to certify new applicants and repair the units to keep them filled;

13) In early July of 2012, six months into her employment with IMS, the Plaintiff found a lump in her breast and immediately informed Block;

14) The Plaintiff told Block that the mammogram confirmed suspicious tissue, that a lumpectomy was scheduled for July 11, 2012, and discussed the procedure and her fears regarding the outcome;

15) Block's reply was that her mother had died of breast cancer, she was still angry at her mother and dealing with her death because her mother had chosen not to the have surgery that could have saved her life;

16) On July 17, 2013, the Plaintiff was advised by her physician that the lumpectomy confirmed a ductal carcinoma, and a partial mastectomy was

scheduled for August 1, 2012, with a pre-surgical appointment scheduled for July 27, 2012;

17) The Plaintiff kept Block advised of her appointment dates and the outcome of each visit;

18) On July 20, 2012, the Plaintiff submitted a vacation request for August 1 through August 8, 2012 for her surgery;

19) On July 23, 2012, the Plaintiff e-mailed Block the pathology report confirming the cancer diagnosis and requested that it be placed in her personnel file;

20) Block's response was to e-mail the Plaintiff asking if she wanted the report sent to Human Resources;

21) Block immediately began distancing her daily management support of the Plaintiff upon learning that she had found a lump in her breast;

22) Phone calls to the Plaintiff to check in and assist with day to day problems and concerns became less frequent, while "documenting" e-mails concerning routine issues were cast in a light intended to reflect poorly on the Plaintiff;

23) The Plaintiff's required post-surgical radiation treatment was scheduled for the first available appointment of the day so as to minimize the impact on work however Block's response was irritation that she would have to drive to Elkhart to cover for the Plaintiff;

24) Block began setting up circumstances to create an appearance of failure on the part of the Plaintiff, for example removing certification applications from the Plaintiff's office and then criticizing when those files were not completed;

25) Block began a campaign to harass and intimidate the Plaintiff, and to create circumstances that enabled her to portray her in a negative light;

26) In July after Block had been made aware of the cancer diagnosis, the Plaintiff received an unprecedented 50 plus emails from Block in the course of three days;

27) These emails were designed to overwhelm, frustrate and complicate the workload beyond previously demonstrated legitimate business purposes;

28) Block removed applicant and tenant files from the office at Town & Country allegedly to assist the Plaintiff;

4

29) When Block returned the files they were not complete and the Plaintiff was then blamed for their incompletion;

30) Block requested the Plaintiff not hire contractors to replace broken air conditioning units, some of which had not been replaced since the 1980's however, upon information and belief, replacement costs had been previously funded by HUD in 2010 and paid to IMS;

31) Block acknowledged to Plaintiff that her work was not able to be completed in a 40 hour work week;

32) At no time did Block discipline the Plaintiff for working more than 40 hours;

33) The Plaintiff either had to work beyond 40 hours, or the work would not be completed, which Block knew;

34) Block knew, expected, and acknowledged that the Plaintiff was working more than 40 hours per week to meet the obligations of the position;

35) After being fired the Plaintiff filed a claim with the U.S. Department of Labor, Wage and Hour division and was awarded $2,520.00 in unpaid wages;

36) Block admonished the Plaintiff that younger employees worked faster and were easier to teach, referencing and comparing her to the 25 year old predecessor;

37) Block viewed the Plaintiff as disabled or perceived her as disabled because of her cancer diagnosis and/or the Plaintiff having the medical condition known as Essential Tremor;

38) Block indicated her discontent regarding the Plaintiff's request for the accommodation of changing her start time each day to one hour later for the radiation treatments she would need following surgery;

39) During this period of time the company's health coverage for employees changed, and among other things, deductibles increased;

40) Plaintiff's medical condition may have been viewed as impacting future ratings for Defendants' health insurance plans;

41) The Defendants failed to accommodate the Plaintiff by allowing her to use her available vacation time off for her surgery, and fired her on July 27, 2012, and terminated her health insurance July 31, 2012, the day prior to her mastectomy;

5

42) That the Plaintiff was fired so as to deny her access to health insurance, to avoid the impact of the cost of her medical care on the company's insurance rating, to avoid having to accommodate her radiation treatments following surgery, and because she was viewed as disabled and/or too old for the position;

43) After discharge and surgery, the Plaintiff was unable to continue COBRA payments and therefore unable to treat with appropriate medications to prevent the recurrence of cancer, has been unable to have reconstructive surgery, and as a result her health has suffered and she has endured severe emotional distress.

## CAUSES OF ACTION

### Count I:   Disability Discrimination

44) The Plaintiff restates the above paragraphs;

45) At all relevant times, the Plaintiff was a qualified individual with a disability or handicap, performing the essential functions of her job;

46) The Plaintiff was terminated because of her disability or handicap, because of a record of disability or handicap, or because Defendants regarded her as disabled or handicapped;

47) As a result of Plaintiff's termination, she has suffered and continues to suffer damages, including without limitation, lost pay and benefits, future lost pay and benefits, loss of her home, out of pocket expenses and emotional distress, has incurred attorney fees, and is entitled to punitive damages.

### Count II.   Age Discrimination

48) The Plaintiff restates paragraphs 1-43;

49) The Plaintiff is an individual over 40 years of age;

50) The Plaintiff was performing the duties of her position;

51) Defendant Block told the Plaintiff that her 25 year old predecessor was easier to teach, and that younger people could learn new things faster;

52) The Plaintiff was fired and replaced with a younger individual;

53) That Defendants' actions were willful, and intentional;

54) As a result, the Plaintiff has lost wages and is entitled, among other things to liquidated damages.

### Count III.   ERISA Discrimination

52) The Plaintiff restates paragraphs 1-43;

53) Defendants, specifically, Melissa Block, expelled, disciplined, or discriminated against the Plaintiff for exercising her right to seek benefits under the company Health Insurance Plan, in violation of 29 USC Section 1140, and the terms of the Health Insurance Plan;

54) In so doing, Defendants retaliated against the Plaintiff.

54) As a result, the Plaintiff suffered harm, continues to suffer harm, and is entitled, among other things, to damages, attorney fees and appropriate equitable relief.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

Award her damages in an amount to be determined at trial and/or by the court; award her equitable relief, in a form to be determined; award her punitive damages; award Attorney fees, costs, and interest and grant such other relief as the court deems just and proper.

Respectfully submitted,

Tamara L. Renner, 11301-71
Attorney for Plaintiff
BANIK & RENNER
217 S. Fourth Street
Elkhart, IN   46516
Telephone: 574.293.7170
Facsimile: 574.294.5424
E-mail: tamararenner@aol.com